UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| PATRICIA S. ABRAHAM, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-1251 |
| ) | |
| v. ) | Honorable Joseph G. Scoville |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **OPINION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income (SSI) benefits. On August 16, 2006, plaintiff filed her application for benefits alleging a June 28, 1992 onset of disability.[1] (A.R. 106-08). Her claim for SSI benefits was denied on initial review. (A.R. 61-64). On April 24, 2009, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 24-95). On August 13, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 12-22). On November 12, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, September 2006 is plaintiff's earliest possible entitlement to SSI benefits.

On December 16, 2010, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 8). Plaintiff raises the following issues:

1. The Commissioner committed reversible error "in failing to properly consider the appropriate listing of impairment relative to mental functioning" and

2. The Commissioner "factually erred in rejecting treating physician opinions as well as those or its [sic] own consulting examiner."

(Plf. Brief at 15, 17, docket # 9). Upon review, the court finds that the ALJ committed reversible error when he failed to consider whether plaintiff met or equaled the requirements of listing 12.05(C). The Commissioner's decision will be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the

-2-

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after August 16, 2006. (A.R. 14). Plaintiff had the following severe impairments: "multiple sclerosis (Exhibits 22F, 23F and 25F); history of seizures/psuedoseizures/dizzy spells (Exhibits 11F, 13F and

23F); migraine headaches (Exhibits 23F and 25F); cognitive disorder/borderline intellectual functioning (Exhibits 3F and 12F); pervasive developmental disorder with explosive features (Exhibit 12F); learning disorder/reading disorder (Exhibits 1F and 3F); depression (Exhibits 1F and 3F) and post traumatic stress disorder (PTSD)(Exhibits 1F and 3F)." (A.R. 14). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of listing 12.04 for affective disorders:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has moderate restriction. The claimant testified that she takes care of her personal needs. According to the claimant, she showers every other day. The claimant also reported that she slipped in the shower. Dr. Elaine Kountanis reported that the claimant had unkempt oily hair. The claimant was dressed in a dirty large hooted [sic] gray sweatshirt. At that time, the claimant reported that she was homeless, but stated that she walks around and stays at different friend's houses (Exhibits 3F and 7F). This information is consistent with no more than moderate limitations in this area.
>
> In social functioning, the claimant has moderate difficulties. The claimant testified that she has anxiety attacks due to her multiple sclerosis and history of rape. The claimant has problems being around other people. One of the examining physicians, Dr. Elaine Kountanis, reported that the claimant has bad fights with her mother because she forgets so easily. The claimant reported that she was afraid to go home because of the intense fighting (Exhibit 7F). The undersigned notes that the claimant was polite and smiling at the hearing, but seemed child-like in some of her responses. The claimant is found not to have a more than moderate limitations in this area.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The medical evidence shows that the claimant has limitations relative to understanding, memory, sustained concentration and persistence of effort. The claimant has a history of

> difficulty focusing and being easily distracted. The claimant is not found to have more than moderate limitations in this area.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The C Criteria concern the claimant's history of mental illness. The medical evidence indicates the claimant's conditions would not be expected to cause decompensation if the claimant was placed in a typical work setting. The claimant is able to function outside a highly supportive living arrangement and outside the environment of her own home.

(A.R. 14-15).

The ALJ did not address listing 12.05 for mental retardation. The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work. (A.R. 16). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 16-20). Plaintiff did not have past relevant work. (A.R. 20). Plaintiff was 19-years-old as of the date she filed her application for benefits and 22-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for SSI benefits, plaintiff was classified as a younger individual. (A.R. 21). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 21). The transferability of work skills was not an issue because plaintiff did not have past relevant work. (A.R. 21). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were more than 102,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 55-56). The ALJ

found that this constituted a significant number of jobs. Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 21-22).

Plaintiff argues that the ALJ committed reversible error "in failing to properly consider the appropriate listing of impairment relative to mental functioning." (Plf. Brief at 15). She argues that the ALJ should have found that she met or equaled the requirements of listing 12.05(C). (Plf. Brief at 16). Upon review, the court finds that the ALJ committed reversible error when he failed to make a determination whether plaintiff's impairments met or equaled the requirements of listing 12.05(C).

It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. The listing must be read as a whole, and plaintiff had the burden of demonstrating that she met all parts of the listing. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125. "The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(A). A claimant will not be found disabled under the listing for mental retardation unless she satisfies the diagnostic description in the introductory paragraph and one of the additional sets of criteria found in paragraphs A through D. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Listing 12.05 contains the following requirements:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports the onset of symptoms before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied:
>
> * * *
>
> (C). A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The Sixth Circuit summarized the claimant's burden under listing 12.05(C) as follows:

> In essence, then, a claimant must make three showings to satisfy Listing 12.05(C): (1) [s]he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2) [s]he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) [s]he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*West v. Commissioner*, 240 F. App'x 692, 697-98 (6th Cir. 2007).

The ALJ did not make any findings whether plaintiff met or equaled the requirements of listing 12.05, restricting his analysis to listing 12.04 for affective disorders. Plaintiff reached age 22 two months before the ALJ entered his decision, so virtually all the evidence in the record is evidence from plaintiff's developmental period. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication and daily living skills." *West v. Commissioner*, 240 F. App'x at 698. There is evidence that plaintiff experienced deficits in these areas, but it remains an open question whether they arose from significantly subaverage intellectual

functioning or other causes.[2] The ALJ never considered Part C of listing 12.05. Thus, he made no findings whether plaintiff's IQ score of 70 was "valid," or whether she had "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

The administrative record contains sufficient evidence of mental retardation to warrant reversal of the ALJ's decision for his failure to determine whether plaintiff met or equaled the requirements of listing 12.05(C). A February 2, 2002, intake assessment for Community Mental Health of Clinton and Eaton Counties indicates that plaintiff was referred for services by her probation officer. Plaintiff, then 14, was charged with domestic assault. She was not doing well in school. She had already been suspended four times during the 2002-2003 school year for coming to class late and being disrespectful to teachers. Her functioning in all areas had deteriorated after an August 2001 rape. Plaintiff was described as making suicidal and homicidal threats when she failed to get her way. She was diagnosed as having a major depressive disorder, single episode, moderate severity, oppositional defiant disorder and post traumatic stress disorder. (A.R. 159-63).

On May 1, 2002, Valerie Guernsey, D.O., conducted a psychiatric evaluation at the Ingham County Youth Center where plaintiff had been held for two weeks following an act of arson. She had set fire to objects in her bedroom because she was angry at being told that she had to do her homework. (A.R. 203). Plaintiff indicated that she was drinking alcohol and smoking marijuana.

---

[2]Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to her disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007);*Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004).

(A.R. 204). She did not have a history of psychiatric hospitalization. (A.R. 284). Plaintiff reported that she "did well in elementary school and in middle school with average to above average grades, until this year." (A.R. 204). She was "particularly good in math and [was] good in music as well." (A.R. 204). She had been classified as learning disabled in reading, and did have some special education attention in elementary school.[3] (A.R. 204). Psychologist Guernsey offered a diagnosis of atypical depression, attention deficit hyperactivity disorder, rule out post-traumatic stress disorder, and a learning disability and reading disability per history. (A.R. 205).

January 30, 2003 records indicate that plaintiff was placed at the youth detention center "numerous times for repeated violations of probation." (A.R. 171). She was "suspended numerous times for insubordinate behavior at school, left school without permission, charged with domestic assault, ran away from home, set fire to furnishings in her home, [and] threatened to harm others on a daily basis." (A.R. 171). In March of 2004, plaintiff was suspended for threatening to cut a teacher's throat or stab her with a knife. (A.R. 186, 195).

On October 6, 2006, plaintiff received an assessment by Psychologist Leonard J. McCulloch. (A.R. 230-36). Plaintiff reported that she had taken special education classes and "graduated high school special ed earlier this year at age nineteen." (A.R. 230). She considered herself homeless. (A.R. 230). She reported that she was taking Paxil prescribed by her family physician, and that it helped with her depression. She denied current or past abuse of drugs or alcohol. (A.R. 231). Plaintiff was immature. She lacked insight. She "seem[ed] aimless and goal-

---

[3]Plaintiff's school records are notably absent from the evidence she submitted in support of her claim for SSI benefits. She graduated from high school in 2006, and it is extraordinarily unlikely that she went through her entire school career without psychiatric or psychological testing and measurement of her IQ.

less and cognitively under par." (A.R. 232). Psychologist McCulloch offered a diagnosis of "PTSD, Depression NOS, Cognitive Disorder (Provisional)," and he suspected a learning disorder and "borderline intellectual functioning or worse." (A.R. 234).

On November 1, 2006, Elaine Kountanis, M.D., examined plaintiff, and noted that she likely had mild mental retardation:

> GENERAL: looking stated age; ambulates with no assist device; unkempt oily hair; strong smell of cigarettes (she was outside smoking and had to be called into the examination); body piercing on the eyebrow and belly; concrete with poor fund of knowledge likely due to mild mental retardation; the client read out of the Nora book only the monosyllable words but with encouragement could sound out the polysyllable words.

(A.R. 243). Dr. Kountanis concluded her report with the somewhat cryptic statement: "Mild mental retardation is more limiting in her social interaction." (A.R. 244).

On January 18, 2007, plaintiff received a consultative evaluation conducted by Psychologist J. Keith Ostein. Plaintiff stated that she "smoked marijuana and drank heavily between the ages of 13 and 17." (A.R. 276). She reported that she was living with her fiancé. (A.R. 276). Psychologist Ostein administered the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III) test. Plaintiff achieved a verbal IQ score of 72, a performance IQ score of 74, and a full scale IQ of 70, all of which fell in the borderline range of intellectual functioning. (A.R. 276-77). Psychologist Ostein also administered the Wide Range Achievement Test-Revision 4 (WRAT-4). Plaintiff's reading, sentence comprehension, and spelling scores were at the 2.8 grade level. Her arithmetic scores were at the 3.5 grade level. Plaintiff was oriented in all three spheres. There was no evidence of a thought disorder. Plaintiff "did not exhibit evidence of hallucinations, delusions, or obsessions." (A.R. 277). Psychologist Ostein found no evidence of illogical, circumstantial, or bizarre ideation. Plaintiff exhibited a pattern of pervasive developmental, social, and interpersonal immaturity. Ostein

offered a diagnosis of pervasive developmental disorder, with explosive features and borderline intellectual functioning. He gave plaintiff a global assessment of functioning (GAF) score of 45. (A.R. 278). Psychologist Ostein stated that plaintiff suffered from "extreme" restrictions in her ability to understand and remember detailed instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, complete a normal workday and workweek without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Ostein opined that plaintiff had "marked" limitations in all other areas evaluated with the exceptions of "moderate" limitations in being aware of normal hazards and taking appropriate precautions, and traveling in unfamiliar places or using public transportation. (A.R. 278-79).

On February 14, 2007, Psychologist Blaine Pinaire reviewed plaintiff's records and completed a psychiatric review technique form. (A.R. 333-46). He offered an opinion that plaintiff had borderline intellectual functioning rather than mental retardation. (A.R. 337). He also concluded that plaintiff was capable of performing unskilled work. (A.R. 329-31).

The court finds that the ALJ committed reversible error when he failed to provide any explanation why plaintiff's impairments did not meet or equal the requirements of listing 12.05. *See Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001); *Nash v. Secretary of Health & Human Servs.*, No. 94-5376, 1995 WL 363381 (6th Cir. June 15, 1995). In *Foster v. Halter*, the Sixth Circuit observed, "Although the presence of multiple impairments can on occasion support a finding that the impairments are equivalent to a listing, a finding of equivalence under Listing 12.05(C) will very rarely be required." 270 F.3d at 355. It then noted that Ms. Foster failed to present any evidence showing significantly subaverage general functioning with deficits in adaptive functioning prior to

the age of 22, thus the ALJ's finding that Foster's impairments did not equal the listing for mental retardation was supported by substantial evidence. *Id.* Here, by contrast, the ALJ ignored listing 12.05. He made no factual findings regarding whether plaintiff met or equaled the requirements of the listing, and the record contains significant evidence that plaintiff had deficits in adaptive functioning before age 22.[4]

### Conclusion

For the reasons set forth herein, the Commissioner's decision will be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

.

Dated:  March 22, 2012           /s/  Joseph G. Scoville
                                 United States Magistrate Judge

---

[4]Plaintiff gave conflicting accounts of her drug and alcohol use. There has not yet been an administrative determination of the extent to which her drug and alcohol use impacted her level of functioning, and whether they preclude an award of SSI benefits. See 42 U.S.C. § 1382c(a)(3)(J).